**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **FIFTH THIRD BANK,** | ) | **CASE NO. 1:08 CV 52** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JOHN C. GENTILE,** *et al.*, | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

<u>**INTRODUCTION**</u>

This matter is before the Court on defendant Gentile Ponderosa, LLC's motion to dismiss plaintiff's first amended complaint for lack of personal jurisdiction (Doc. 15) and plaintiff Fifth Third Bank's motion for leave to file a surreply (Doc. 31).  This case arises out of a loan guaranty agreement entered into between John C. Gentile and Fifth Third Bank.  For the reasons that follow, Gentile Ponderosa, LLC's motion to dismiss is DENIED and plaintiff's motion for leave is DENIED.

<u>**FACTS**</u>

Plaintiff Fifth Third Bank ("plaintiff" or "Fifth Third") brings this action against John C. Gentile ("Mr. Gentile"), Gentile Ponderosa, LLC ("Ponderosa") and Gentile Euclid, LLC

("Euclid") (collectively, "defendants").

The facts as stated herein are taken from plaintiff's first amended complaint and the exhibits thereto unless otherwise indicated.  Only those facts necessary for resolution of the present motions are included.

Plaintiff Fifth Third is an Ohio banking corporation.  Defendant Mr. Gentile resides at 12525 East Doubletree Ranch Road, Scottsdale, Arizona (the "Arizona Property").  Defendants Ponderosa and Euclid are each Arizona limited liability companies with their principal place of business at the Arizona Property.  Evidence submitted with plaintiff's opposition to Ponderosa's motion to dismiss establishes that the Arizona Property was conveyed to both Mr. Gentile and his wife Marcia L. Gentile in April 2004.

On or about February 28, 2003, an entity named 5725 Canal, LLC ("Canal") entered into a promissory note with Fifth Third in the amount of $1,300,000.  Canal used the loan to purchase real property located at 5725 Canal Road, Valley View, Ohio (the "Canal Road Property").  On that same date, Mr. Gentile and Roller World, Inc. (collectively, the "Guarantors") entered into a guaranty agreement for the benefit of Fifth Third (the "Guaranty").[1]  Fifth Third required the Guaranty as a condition to making the loan to Canal.  The Guarantors "jointly and severally, and absolutely and unconditionally, guarant[eed] payment and performance, as and when due, of the Guaranteed Obligations."  These Guaranteed Obligations are defined in the Guaranty to include all indebtedness and other liabilities of Canal to Fifth Third including the loan for the Canal Road Property.  The Guaranty further states it is "irrevocable, absolute, continuing and

---

[1] Mr. Gentile executed the Guaranty on behalf of Roller World, Inc. as its President.

2

unconditional."

Canal defaulted on its obligations to Fifth Third and Fifth Third consequently brought suit against Canal in the Cuyahoga County Court of Common Pleas to collect on the loan (the "State Court Action").  On January 3, 2006, the Cuyahoga County Court of Common Pleas (the "Common Pleas Court") entered judgment in favor of Fifth Third and against Canal in the amount of $1,278,600.26 plus interest from December 8, 2005 in the amount of 12% per annum plus late charges, fees, and costs and expenses of the State Court Action.  On February 8, 2007, the Common Pleas Court entered an order authorizing the sale of the Canal Road Property.  After the sale, a deficiency remained.

Fifth Third attempted to collect this deficiency from Mr. Gentile as Guarantor via demand letter sent May 17, 2007.  On May 31, 2007, Mr. Gentile and his wife executed a special warranty deed transferring the Arizona Property to Ponderosa.[2, 3]  Evidence submitted with plaintiff's opposition to the motion to dismiss shows that Ponderosa was formed on May 31, 2007.  The Articles of Organization state that Mr. Gentile was the Organizer and Ponderosa and he and his wife were designated as the initial Co-Managers.  An entity named Gentile Asset Management LP ("Asset Management") is the only identified owner of Ponderosa.  Asset Management registered with the Arizona Secretary of State on June 8, 2007, and its general partner is The Gentile Family Trust ("Family Trust").  According to documents from the Arizona

---

[2]

       The deed states its "effective date" was May 1, 2007.  Neither party addresses this apparent contradiction.

[3]

       A similar transaction took place between Mr. Gentile and defendant Euclid in which a parcel of property located in Euclid, Ohio was transferred from Mr. Gentile to Euclid on May 31, 2007.

3

Secretary of State, the Family Trust, dated May 1, 2007, has as its co-trustees Mr. Gentile and his wife.

On November 7, 2007, Fifth Third obtained an order from the Common Pleas Court determining the deficiency remaining with respect to the judgment entered against Canal to be $709,825.65 plus interest from November 1, 2007 at 12% per annum plus late charges, fees, costs and expenses of the State Court Action.  On January 8, 2008, plaintiff Fifth Third instituted the current action against defendants Mr. Gentile, Ponderosa, and Euclid.

Plaintiff's first amended complaint asserts eight causes of action.  Count I is directed to Mr. Gentile and alleges breach of the guaranty agreement.  Counts II through IV assert defendant Ponderosa is liable for fraudulent transfer pursuant to Arizona Revised Statutes ("A.R.S.") §§ 44-1004(A)(1), 44-1004(A)(2) and 44-1005.  Counts V through VIII allege that defendant Euclid is liable for fraudulent transfer pursuant to Ohio Rev. Code §§ 1336.04(A)(1), 1336.04(A)(2), 1336.05(A) and 1336.05(B).

Defendant Ponderosa moves to dismiss plaintiff's first amended complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Plaintiff moves for leave to file a surreply.  Each motion is opposed.

### **STANDARD OF REVIEW**

The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant.  *Pennoyer v. Neff*, 95 U.S. 714 (1878).  Presented with a motion to dismiss for lack of personal jurisdiction and opposition thereto, "a court has three procedural alternatives:  it may decide the motion upon the affidavits alone;  it may permit discovery in aid of deciding the motion;  or it may conduct an evidentiary

4

hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The court has discretion to decide which method it will follow. *Id*. However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists. *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212, 1214 (6th Cir. 1989). If the defendant supports his motion to dismiss with affidavits, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Theunissen*, 935 F.2d at 1458 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974).

In the absence of an evidentiary hearing, the court must view the pleadings and affidavits in the light most favorable to the plaintiff and not consider the controverting assertions of defendant. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000). Thus, the plaintiff's burden is only that of making a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal. *Id.*; *see also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("When the district court dismisses a complaint pursuant to Rule 12(b)(2) without conducting an evidentiary hearing on the issue of personal jurisdiction ... the plaintiff need only make a *prima facie* showing of jurisdiction ... [and the court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff ..."). This burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). A *prima facie* showing is made by "establishing with reasonable particularity sufficient contacts between [defendant] and the forum state to support jurisdiction." *Neogen Corporation v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal citations omitted). Under this standard, dismissal is "proper only if *all* the specific facts which the plaintiff ... alleges collectively fail to state a *prima facie*

case for jurisdiction." *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir.1997) (quoting *Theunissen*, 935 F.2d at 1458) (emphasis added by *Kerry Steel* court).

**DISCUSSION**

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotations and citations omitted). By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Id.*

"In dealing with a diversity case, [the court] looks to the law of the forum state to determine whether personal jurisdiction exists. The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Calphalon*, 228 F.3d at 721-22 (internal citations omitted). Due process requirements are satisfied when a nonresident corporate defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Court may acquire personal jurisdiction over a defendant in one of two ways: generally or specifically. *Kerry Steel*, 106 F.3d at 149. General personal jurisdiction "depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the

6

plaintiff may have against the defendant." *Id.*  Specific personal jurisdiction, on the other hand, exposes the defendant to suit in the forum state "only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (internal citations omitted).

Defendant Ponderosa argues that both general and specific jurisdiction are lacking. Plaintiff concedes that this Court has no general jurisdiction over Ponderosa but contends that specific jurisdiction does exist.[4]  To make a showing of specific jurisdiction over Ponderosa, plaintiff must first establish that the Ohio long-arm statute is met.  For this, plaintiff relies on the section of the long-arm statute that provides:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's ... [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev. Code § 2307.382(A)(6).

If the long-arm statute is satisfied, the Court must then determine whether specific jurisdiction may be asserted over a defendant without offending due process.  For this step in the analysis, the Court applies a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

---

[4]
> "Gentile Ponderosa's lack of systematic and continuous contacts to satisfy general jurisdiction in the State of Ohio (or in any state, for that matter) is unsurprising and not in dispute."  Pl. Opp. to Def. Motion to Dismiss.  (Doc. 24)

7

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  In other words, there must be a "relationship among the defendant, the forum, and the litigation" to support a finding of specific jurisdiction over a defendant.  *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).  Defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.  The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Even a single act can support jurisdiction so long as it creates a "substantial connection" with the forum rather than an "attenuated" one.  *Burger King*, 471 U.S. at n.18.

Ponderosa argues that there can be no specific jurisdiction because the causes of action asserted against it involve the alleged fraudulent transfer of real property in Arizona from one Arizona resident, Mr. Gentile, to another, Ponderosa - that is, Ponderosa has not purposely availed itself of the privilege of acting in Ohio nor has it caused any consequence in Ohio.[5]

---

[5]

> Ponderosa also asserts that, because plaintiff's first amended complaint fails to allege any facts in support of personal jurisdiction over Ponderosa, Ponderosa's motion to dismiss must be granted.  *See McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (stating in dicta that plaintiff "must allege in his pleading the facts essential to show jurisdiction"); *see also Baltimore and Ohio*

Plaintiff counters with several arguments.  First, plaintiff asserts that the sole purpose for

Ponderosa's formation was to be the recipient of the alleged fraudulent transfer to shield Mr.

Gentile's assets and avoid execution on the judgment entered in the State Court Action.  Plaintiff

further argues that Ponderosa's intent to injure plaintiff can be inferred both from its acceptance

of the Arizona Property and from its management and ownership structure.  In the alternative,

plaintiff asserts that this Court has personal jurisdiction over Ponderosa because it is merely the

alter ego of Mr. Gentile, over whom the Court "undoubtably" has personal jurisdiction.[6]

     As stated above, evidence submitted with plaintiff's opposition to the motion to dismiss

---

*Railroad Co. v. Mobile Tank Car Servs.*, 673 F.Supp. 1436 (N.D. Ohio 1987) (Battisti, C.J.).  However, the more recent decisions by the Sixth Circuit cited above make clear that evidence may be submitted and heard before a court rules on a motion to dismiss for lack of personal jurisdiction.  *Theunissen*, 935 F.2d at 1458 ("A district court faced with a motion to dismiss for lack of personal jurisdiction over the defendant may permit the plaintiff further discovery to investigate jurisdictional facts.").  Thus, Ponderosa's argument is without merit.

[6]    Ponderosa replies that it was Mrs. Gentile, not defendant Mr. Gentile, who was the true owner of the Arizona Property and that, even if Mr. Gentile was an owner of the Arizona Property, his bare title had no value.  The parties also spend a great deal of time discussing whether or not the evidence shows the Arizona Property was transferred to Ponderosa in exchange for good consideration or not.  Because these arguments go to the merits of the parties' claims and not to whether the Court may exercise personal jurisdiction over Ponderosa, the Court will not address them.

It is sufficient for purposes of the motion to dismiss to note that the evidence submitted by plaintiff identifies Mr. Gentile as one of the grantees when the Arizona Property was acquired in 2004 and also identifies him as one of the grantors of the property to Ponderosa in 2007.  This evidence supports plaintiff's claim that the Ohio long-arm statute is met, discussed more fully in the body of this Opinion below.

shows that Ponderosa was formed on May 31, 2007 and is managed by Mr. Gentile and his wife

Marcia L. Gentile.[7]  An entity named Gentile Asset Management LP ("Asset Management") is

the only identified owner of Ponderosa.  Asset Management registered with the Arizona

Secretary of State on June 8, 2007.  Its general partner is The Gentile Family Trust ("Family

Trust").  The Family Trust, dated May 1, 2007, has as its co-trustees Mr. Gentile and his wife.[8]

The Arizona Property was conveyed by warranty deed to both Mr. and Mrs. Gentile on or about

April 20, 2004.  When the Arizona Property was then conveyed to Ponderosa, both Mr. and Mrs.

Gentile are listed as the grantors on the deed.[9]

     Before addressing the merits of the parties' positions, the Court addresses plaintiff's

---

[7]
     Ponderosa submitted no affidavit or any other form of evidence with its motion.  It did submit evidence with its reply brief.  One piece of this evidence is Ponderosa's response to plaintiff's request for written discovery.  In response to a request for admission, Ponderosa denied it was formed between May 24, 2007 and July 1, 2007.

[8]
     Ponderosa asserts that the Family Trust has other trustees.  However, the documentary evidence submitted by plaintiff identifies only Mr. and Mrs. Gentile and Ponderosa submits no evidence supporting its assertion.  In any event, the posture of this case dictates that the Court may not give credence to defendant's controverting assertions.

[9]
     Ponderosa also argues the merits of plaintiff's claim (after complaining that plaintiff did the same in its opposition to the motion to dismiss).  For purposes of deciding the jurisdictional question before it, the Court does not opine upon Ponderosa's assertions that the Arizona Property is not an "asset" under fraudulent transfer law or that Arizona's community property laws preclude plaintiff from looking to the Arizona Property to satisfy the debt guaranteed by Mr. Gentile.  Similarly, Ponderosa's argument that venue is improper and only courts of the state in which real property is located can adjudicate title to that property is irrelevant to whether this Court has personal jurisdiction over Ponderosa.

10

motion for leave to file a surreply. Plaintiff seeks only to bring to the Court's attention that Ponderosa's reply raised for the first time factual arguments that were neither raised before nor are relevant to the motion to dismiss for lack of personal jurisdiction. As stated elsewhere in this Opinion, the Court agrees that Ponderosa's arguments regarding the merits of plaintiff's case are irrelevant to the present motion to dismiss. *See* n.7 and n.10, *supra*. The Court has also already acknowledged that it may not consider Ponderosa's controverting assertions. *See* n.9, *supra*. Accordingly, plaintiff's motion for leave to file surreply is unnecessary and is denied.[10]

With regard to its motion to dismiss, defendant Ponderosa relies on *Healthcare Capital, LLC v. HealthMed, Inc.*, 213 F. Supp. 2d 850 (S.D. Ohio 2002), in which an Ohio plaintiff sued several Nevada and California residents for, among other things, fraudulent transfer. Plaintiff alleged that defendants appeared in person in Ohio and directed letters and other contacts to plaintiff in Ohio to solicit plaintiff's participation in a business association with defendants. A joint venture agreement between the parties followed and plaintiff became a shareholder of one of the corporate defendants. Plaintiff's claim arose out of the allegation that defendants transferred substantial assets in the form of common stock without the approval of plaintiff as a shareholder. The district court concluded that, while defendants did make contact with Ohio

---

[10]
> Ponderosa, in its opposition to plaintiff's motion for leave, attempts to yet again make new arguments and attempts to more fully respond to plaintiff's opposition to the motion to dismiss. Ponderosa cannot use plaintiff's motion for leave as a chance to take a proverbial second bite at the apple. These new arguments made in Ponderosa's opposition to plaintiff's motion for leave have not been considered. Though, the Court does note that the Texas court of appeals case relied upon by Ponderosa is distinguishable. Texas' long-arm statute, as cited by *Republic Drilling Co. v. Retamco Operating, Inc.*, 2007 Tex. App. LEXIS 2369, does not appear to provide for jurisdiction of a defendant who commits a tort outside the state.

11

when forming the joint venture, these contacts did not form the basis of the complaint. Thus, defendants did not purposely avail themselves of Ohio nor did the cause of action arise out of Ohio. The court did not address whether or which portion of Ohio's long-arm statute might be applicable.

Plaintiff Fifth Third, on the other hand, directs the Court to *Scotts Co. v. Aventis, S.A.*, 145 Fed. Appx. 109 (6th Cir. Aug. 4, 2005). While the facts of the *Scotts* case are somewhat involved, a discussion of the court's holding cannot be had without some background. Plaintiff Scotts, which is headquartered and operates in Ohio, had entered into a contract with Rhone-Poulenc Agro ("Agro") to purchase its lawn and garden business (the "Master Contract"). As a part of the Master Contract, Agro agreed not to compete with Scotts in the lawn and garden business for a certain period of time and to sell to Scotts any controlling interest it later acquired in such a business. One year later, Agro's parent company merged with another to form Aventis. The subsidiaries that were operating in the agricultural business were merged to form Aventis CropScience ("ACS"). ACS, as successor-in-interest to Agro, became liable for the obligations under the Master Contract with Scotts. ACS later acquired a controlling interest in a lawn-care products business. Scotts expressed an interest in purchasing the lawn-care business from ACS, pursuant to the Master Contract. After negotiations, Scotts' offer was not accepted. Scotts proceeded to sue and alleged that the parent company Aventis instructed ACS to make a bad faith offer to interfere with Scotts' contractual rights. Aventis then transferred its interest in the lawn-care business to another wholly-owned subsidiary, StarLink, and sold the remainder of ACS to another entity. StarLink, as holder of lawn-care business, was accordingly joined as defendant in plaintiff's suit against Aventis.

12

Both Aventis and StarLink moved to dismiss for lack of personal jurisdiction.  None of the parties disputed that Section (A)(6) of Ohio's long-arm statute was met - plaintiff had alleged sufficient facts that both defendants caused a tortious injury in Ohio with the intent to injure and the reasonable expectation that someone in Ohio would be injured.  And, so, the court proceeded to consider whether the three-part test for specific jurisdiction was met.  As to the purposeful availment prong, the court looked to the "effects test."  *See Calder v. Jones*, 465 U.S. 783 (1984).  Under the effects test, the court may look not only to defendants' acts in Ohio but the effect of those acts upon Ohio.

The Sixth Circuit applies the *Calder* test "narrowly."  *Scotts*, 145 Fed. Appx. at n.1. Tortious injury in Ohio, alone, is not necessarily sufficient.  The court, instead, evaluates "whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises."  *Id.*  This may involve, for example, looking at "the terms of the contract, the parties' course of dealing, and the contacts created by the out-of-state-defendant in committing the alleged tort" or whether defendant knew a resident of the forum state could be the victim of its conduct.  *Id.*

In applying these principles, the *Scotts* court found that the defendants' actions did have a sufficient effect on Ohio so as to subject defendants to suit here.  In coming to its decision, the court stated that "most important" was the fact that defendants knew of the connection between the contractual agreement and Ohio and that the contract "was not merely an isolated transaction, but rather, one that contemplated the possibility of" future transactions between the parties. Defendants also "knew that the brunt of the harm would be felt in Ohio, where Scotts conducts

its business."

The court also found that the cause of action arose out of defendants' activities in the forum.  A "lenient standard ... applies when evaluating the 'arising from' criterion."  *Scotts*, 145 Fed. Appx. at 115.  If the alleged tortious conduct is made possible only by defendant's transaction of business with plaintiff, the "arising out of" prong will be met.  *Id.* (citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972)).  The *Scotts* court concluded that "but for the Master Contract and its option-to-purchase clause, there would have been no alleged tortious interference.  Therefore, under the second *Southern Machine* factor, we find that Scotts' claims against Aventis  and StarLink arose from their predecessors' specific business contacts with Ohio."

"[W]hen the first two factors are met, a presumption arises that the exercise of jurisdiction would be 'reasonable' under the third factor."  *Scotts*, 145 Fed. Appx. at 115.  The court thus concluded:  "In sum, Scotts has made a prima facie showing that the exercise of specific jurisdiction over Aventis  and StarLink would not offend traditional notions of fair play and substantial justice.  Accordingly, when we draw all permissible inferences in favor of Scotts at this stage of the proceedings, we hold that the district court erred in holding that the exercise of specific jurisdiction would not satisfy due process standards.  Accordingly, Defendants may be haled into an Ohio court to answer Scotts' claims that they tortiously interfered with its contractual rights."

Applying the facts of the present case to the law, the Court finds, first, that plaintiff has met its burden of showing Ponderosa's actions do fall within Ohio's long-arm statute.  *Cadle Co. v. Lobingier*, 1996 Ohio App. LEXIS 3480 (Ohio App. Ct. Aug. 16, 1996) (plaintiff's allegation

14

that defendant committed tortious conduct that defendant would reasonably have known would cause injury to an Ohio resident is sufficient to demonstrate a *prima facie* case that section (A)(6) of Ohio's long-arm statute is met, because all facts must be construed in plaintiff's favor). In the present case, when all facts are construed in plaintiff's favor, the Court finds plaintiff has made out a *prima facie* case that Ponderosa caused tortious injury in Ohio with the intent to injure and that Ponderosa might reasonably have expected such injury to occur in Ohio. Ponderosa was the recipient of a property transfer from Mr. Gentile who was a party to a Guaranty agreement with Fifth Third.[11]  The Guaranty agreement was executed in Ohio.  Fifth Third is located in Ohio.   Mr. Gentile was the Organizer and Co-Manager of Ponderosa at the time the alleged fraudulent transfer took place.  It is thus  reasonable to conclude that Ponderosa knew of the Guaranty agreement by virtue of the knowledge of Mr. Gentile, knew the Guaranty was executed in Ohio, and knew the beneficiary of the Guaranty was an Ohio bank.  It is also reasonable to conclude that Ponderosa knew of the judgment entered against Canal in the State Court Action as well as the demand by Fifth Third to Mr. Gentile attempting to collect on the deficiency left after sale of the Canal Road Property.  As a result, Ponderosa should have known that receipt of the Arizona Property might cause harm in Ohio.  These facts make out a *prima*

---

[11]

Ponderosa's assertion that the appearance of Mr. Gentile's name on the title to the Arizona Property is "hardly conclusive" as to whether he was the true owner seems spurious, at best.  In any event, such evidence is sufficient - when considered in the light most favorable to plaintiff (which the Court must do).  Defendants' assertions to the contrary may be permitted no weight.  *Calphalon*, 228 F.3d at 721-22.

Likewise, Ponderosa's argument that it did pay value for the Arizona Property goes to the merits of plaintiff's cause and not to whether jurisdiction may properly be asserted.

*facie* case that Ohio's long-arm statue is met.

The Court also finds that Ponderosa should have reasonably anticipated being called into court in Ohio for its actions.  The relationship between Ponderosa and Ohio, as detailed in the preceding paragraph, is no so attenuated that the exercise of jurisdiction over this defendant would offend traditional notions of fair play and substantial justice.  Ponderosa purposely availed itself of Ohio under the "effects test" described in *Scotts*.[12]  Specifically, the effect of the alleged fraudulent transfer was to harm a bank located in Ohio attempting to collect on a Guaranty entered into in Ohio.  This is analogous to *Scotts*, in which defendants allegedly interfered with a contract they knew to have been made in Ohio.  The Court also concludes that plaintiff's claim arises out of Ponderosa's acts in that "but for" the Guaranty agreement, plaintiff would have no claim in the present case.  Finally, given the presumption that arises once the first two *Mohasco* prongs are met, requiring Ponderosa to defend in Ohio is not unreasonable.[13]

**CONCLUSION**

For the foregoing reasons, Ponderosa's motion to dismiss is DENIED and plaintiff's motion for leave is DENIED.

---

[12]

The fact that *Scotts* is an opinion issued by the Sixth Circuit Court of Appeals, while *Healthcare* was rendered by a district court, is significant in this Court's decision to rely on the former rather than the latter opinion.

[13]

Based on the resolution of the jurisdictional question on these grounds, the Court declines to decide whether or not Ponderosa is the alter ego of Mr. Gentile and whether such a relationship is sufficient to subject Ponderosa to the jurisdiction of this Court.

16

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 6/9/08