**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FIFTH THIRD BANK,** | ) | **CASE NO. 08 CV 52** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JOHN C. GENTILE,** *et al.*, | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

<u>**INTRODUCTION**</u>

This matter is before the Court upon four motions:  (1) Plaintiff's Motion for

Summary Judgment on Counts 2-7, 9-11, 13-15 and for Partial Summary Judgment on Counts

18-20 (Doc. 117); (2) the Non-Guarantor Defendants' Motion for Summary Judgment on

Counts 2-24 (Doc. 116); (3) Plaintiff's Motion to Strike the Affidavit of John C. Gentile and

the Expert Report of Kevin H. LeClair (Doc. 119); and (4) the Non-Guarantor Defendants'

Motion to Strike the Affidavit of Timothy J. Richards and Certain other Exhibits (Doc. 123).[1]

---

[1]

It is not at all clear why plaintiff has requested a grant of only

This case arises out of a guaranty agreement entered into between plaintiff Fifth Third Bank and defendant John C. Gentile.

For the reasons that follow, plaintiff's Motion for Summary Judgment is GRANTED as to the counts directed to an actual intent to defraud:  Counts 2, 5, 9, 13 and 18.  The Non-Guarantor Defendants' Motion for Summary Judgment is DENIED as to these same counts.

The counts alleging constructive fraud and fraud based on "insider" status are DISMISSED as MOOT:  Counts 3-4, 6-8, 10-12, 14-17, 19-21 and 23-24.

As to Count 22, the Court *sua sponte* GRANTS summary judgment to plaintiff as to the transfers of John C. Gentile's paychecks to his wife.  The Non-Guarantor Defendants' Motion for Summary Judgment on Count 22 is DENIED as to Gentile's paychecks and GRANTED as to all other alleged cash transfers.

Plaintiff's Motion to Strike is GRANTED.

The Non-Guarantor Defendants' Motion to Strike the Affidavit of Timothy Richards and Certain other Exhibits is DENIED.

**<u>FACTS</u>**

Only those facts necessary to a resolution of the present motions are set forth below.

Plaintiff Fifth Third Bank brings this action against John C. Gentile ("Gentile") as well as Gentile Ponderosa, LLC, Gentile Euclid, LLC, Gentile Asset Management, LP, the Gentile Family Trust, the Gentile Dynasty Trust, Marcia L. Gentile ("Mrs. Gentile"), Marc A. Gentile, Leslie A. Gentile and Danielle A. Gentile (the "Non-Guarantor Defendants" or

_____

"partial" summary judgment on Counts 18-20.  As far as the Court can tell, these claims are fully disposed of by this Opinion.

"NGDs", also referred to as "defendants" in this Opinion).  Plaintiff Fifth Third Bank is an Ohio banking corporation.  All defendants are natural persons residing in Arizona or are entities organized under the laws of Arizona.

In 2003, plaintiff and Gentile entered into a guaranty by which Gentile unconditionally guaranteed a loan from plaintiff to one of Gentile's businesses (the "Guaranty").  The borrower subsequently defaulted on the loan.  In 2006, plaintiff obtained a state court judgment against the borrower.  In 2007, the property securing the loan was sold.  A deficiency remained.  On May 17, 2007, plaintiff attempted to recover this deficiency from Gentile under the authority of the Guaranty.  Gentile refused to pay.  The present suit followed.

Plaintiff's Third Amended Complaint contains twenty-four claims for relief.  This Court previously granted summary judgment against Gentile on Count 1 for breach of the Guaranty (Doc. 107).  Plaintiff now seeks to recover on that Guaranty.  Gentile has transferred all of his assets to the Non-Guarantor Defendants.  Counts 2-23 allege the transfers were fraudulent.

Plaintiff moves for summary judgment with respect to the following suspect conveyances:

> 1.  residential property in Scottsdale, Arizona (the "Arizona Property") was transferred to defendant Ponderosa on May 31, 2007;
>
> 2.  property in Euclid, Ohio (the "Ohio Property") was transferred to defendant Euclid on May 31, 2007;
>
> 3.  two Oppenheimer investment accounts held solely by Gentile (account numbers ending -1111 and -7194) ("Gentile's Oppenheimer Accounts") were transferred to defendant Asset

Management on May 31, 2007;

4. a joint Oppenheimer account (account number ending -9940) was transferred to Asset Management on May 31, 2007 (the "Joint Oppenheimer Account")[2];

5. a life insurance policy covering John Gentile, acquired by gift, was transferred to defendant the Dynasty Trust on May 31, 2007 (the "Dynasty Asset")[3];

6. all of Gentile's remaining assets were assigned to the Family Trust on May 31, 2007. These assets included "household goods and personal effects," "automobile(s)," a joint Bank of America account (account number ending -1223), the benefits of an "IRA, annuities, and retirement accounts," and all "miscellaneous property (omnibus transfer document)."[4] This sixth category of assets is referred to as the "Family Assets" and, collectively, all of the assets are referred to as the "Transferred Assets."

Plaintiff fails to indicate which of the suspect transfers identified above corresponds to which of plaintiff's claims for relief. The Court has created the following table to more clearly summarize what exactly is at issue.

---

[2]

Plaintiff originally charged that a joint checking account was also transferred to Asset Management. While this account is listed on Asset Management's Schedule of Assets, it appears the account never existed. Therefore, plaintiff has withdrawn this part of its claim against Gentile and Asset Management.

[3]

The Dynasty Asset was originally defined to include a joint checking account. As with the assets transferred to Asset Management (see n.2), this account was listed on the Schedule of Assets for the Dynasty Trust but never actually existed. Plaintiff withdraws its claim to this extent.

[4]

Plaintiff withdraws its claim as to "past and accrued employment benefits" because they never existed.

4

| Count | NGD Transferee | Transferred Asset | Theory of Recovery |
|---|---|---|---|
| 2 | Ponderosa | Arizona Property | actual intent to defraud |
| 3 | Ponderosa | Arizona Property | constructive fraud |
| 4 | Ponderosa | Arizona Property | constructive fraud |
| 5 | Euclid | Ohio Property | actual intent to defraud |
| 6 | Euclid | Ohio Property | constructive fraud |
| 7 | Euclid | Ohio Property | constructive fraud |
| 8 | Euclid | Ohio Property | constructive fraud based on insider status<br><br>(plaintiff does not move for summary judgment on this count) |
| 9 | Family Trust | Family Assets | actual intent to defraud |
| 10 | Family Trust | Family Assets | constructive fraud |
| 11 | Family Trust | Family Assets | constructive fraud |
| 12 | Family Trust | Family Assets | constructive fraud based on insider status<br><br>(plaintiff does not move on this count) |
| 13 | Dynasty Trust | Dynasty Asset | actual intent to defraud |
| 14 | Dynasty Trust | Dynasty Asset | constructive fraud |
| 15 | Dynasty Trust | Dynasty Asset | constructive fraud |
| 16 | Dynasty Trust | Dynasty Asset | constructive fraud based on insider status<br><br>(plaintiff does not move on this count) |

| Count | NGD Transferee | Transferred Asset | Theory of Recovery |
|---|---|---|---|
| 17 | Asset Management | Gentile's Oppenheimer Accounts; Joint Oppenheimer Account | constructive fraud based on insider status<br><br>(plaintiff does not move on this count) |
| 18 | Asset Management | Gentile's Oppenheimer Accounts; Joint Oppenheimer Account | actual intent to defraud |
| 19 | Asset Management | Gentile's Oppenheimer Accounts; Joint Oppenheimer Account | constructive fraud |
| 20 | Asset Management | Gentile's Oppenheimer Accounts; Joint Oppenheimer Account | constructive fraud |
| 21 | Mrs. Gentile | The AmTrust Accounts - cash in excess of $200,000 acquired since 1/1/2007 | constructive fraud based on insider status<br><br>(plaintiff does not move on this count) |
| 22 | Mrs. Gentile | AmTrust Accounts | actual intent to defraud<br><br>(plaintiff does not move on this count) |
| 23 | Mrs. Gentile | AmTrust Accounts | constructive fraud<br><br>(plaintiff does not move on this count) |
| 24 | Mrs. Gentile | AmTrust Accounts | constructive fraud<br><br>(plaintiff does not move on this count) |

Each of plaintiff's fraudulent transfer claims is made against both Gentile and the NGD to whom the transfer was made.  As stated above, plaintiff moves for summary judgment on Counts 2-7, 9-11, 13-15 and for Partial Summary Judgment on Counts 18-20. The NGDs oppose plaintiff's Motion for Summary Judgment.  Gentile does not.

The Non-Guarantor Defendants move for summary judgment on all claims asserted against them, Counts 2-24.  Plaintiff opposes the motion.

**STANDARD OF REVIEW**

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).  A fact is material only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the

7

> adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 255); *see also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

Summary judgment is appropriate when a party who bears the burden of proof at trial fails to make a showing sufficient to establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  When the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252).  Moreover, if the evidence is "merely colorable" or is not "significantly probative," the court may grant summary judgment.  *Anderson*, 477 U.S. at 249-50.

**DISCUSSION**

Plaintiff seeks to prove the various transfers from Gentile to the Non-Guarantor Defendants were fraudulent.  The parties' motions present the Court with three questions:  (1) choice of law; (2) application of the elements of a fraudulent transfer claim under that chosen

law; and (3) whether plaintiff can ultimately collect on any judgment it might obtain on its fraudulent transfer claims.

## I.      Choice of Law

Each of plaintiff's causes of action arises under state law.  A federal court sitting in diversity applies the choice of law principles of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  In Ohio, courts look to the Restatement (Second) of Conflict of Laws (the "Restatement") for their choice of law analysis.  *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 341-42 (1984).

Plaintiff argues that Ohio law should apply to the fraudulent transfer claims.  The NGDs argue for application of Arizona law.  Neither party disputes that both Ohio and Arizona have adopted the Uniform Fraudulent Transfer Act ("UFTA").  Both agree the substantive elements of a fraudulent transfer claim are the same in both jurisdictions.  Ohio Rev. Code §§ 1336.04-05; Ariz. Rev. Stat. §§ 44-1004, -1005.  Thus, in determining whether the transfers were fraudulent, the Court need not decide which jurisdiction has the greater connection to the causes of action under the factors enumerated in the Restatement.  The Court will cite to both statutes in its discussion of the fraudulent transfer claims, below.

## II.     Elements of Fraudulent Transfer Claims

To succeed on a fraudulent transfer claim, plaintiff must prove either:  (1) the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor" or (2) the transfer was made "without receiving a reasonably equivalent value in exchange for the transfer or obligation" and either (a) "the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably

small in relation to the business or transaction" or (b) "the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."  Ohio Rev. Code § 1336.04(A); Ariz. Rev. Stat. § 44-1004(A). Plaintiff may also succeed if it proves defendant made the transfer "without receiving a reasonably equivalent value" and defendant was "insolvent" at that time or became insolvent as a result of the transfer.  Ohio Rev. Code § 1336.05(A); Ariz. Rev. Stat. § 44-1005.  Finally, under Ohio law, plaintiff may argue the transfer was "made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent."  Ohio Rev. Code § 1336.05(B).

The NGDs do not dispute that plaintiff is a creditor of Gentile or that Gentile actually made the transfers.[5]  They challenge whether plaintiff has sufficiently proven intent to defraud.  They also dispute whether or not plaintiff can prove Gentile did not receive "reasonably equivalent value" for the property he transferred.  They further dispute whether some of the transferred property can be considered "assets" of Gentile.

A.    Whether the Transfers Were Fraudulent

As stated above, there are multiple ways to prove a transfer is fraudulent.  Plaintiff's primary argument is that Gentile made the transfers with the actual intent to commit fraud. Because direct evidence of actual intent is often difficult to obtain, a plaintiff may prove intent with evidence of the "badges of fraud."  *Blood v. Nofzinger*, 834 N.E.2d 358, 368 (Ohio

---

[5]

In their Motion to Strike, defendants half-heartedly argue that certain of the trust documents evidencing the transfers were not properly authenticated (Exhibits I, S, W, 3, 5, 13, 14, 16 and 19).  For the reasons stated in plaintiff's opposition, the Court disagrees. Defendants' Motion to Strike is denied as to these exhibits.

Ct.  App. 2005); *Gerow v. Covill*, 960 P.2d 55, 63 (Ariz. Ct. App. 1998).  The UFTA provides

a non-exhaustive list of eleven badges of fraud.  Plaintiff provides evidence in support of the

following:

> (1) Whether the transfer or obligation was to an insider;
>
> (2) Whether the debtor retained possession or control of the property transferred after the transfer;
>
> (3) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
>
> (4) Whether the transfer was of substantially all of the assets of the debtor;
>
> (5) Whether the debtor removed or concealed assets;
>
> (6) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

Ohio Rev. Code § 1336.04(B); Ariz. Rev. Stat. § 44-1004(B).  A finding of fraud takes into

consideration all facts and circumstances.  *Blood*, 834 N.E.2d at 368; *Gerow*, 960 P.2d at 63.

Initially, the burden is on the creditor to provide such evidence.  *Blood*, 834 N.E.2d at

368; *Gerow*, 960 P.2d at 63.  Once the creditor meets its burden, the burden shifts to the

debtor to prove the transfers were made in good faith and he received reasonably equivalent

value for the assets.  *Blood*, 834 N.E.2d at 369.

Plaintiff points to several pieces of evidence to prove these badges of fraud.  First,

plaintiff points to Gentile's estate planning documents.  The documents, which were prepared

to outline which assets would go to which NGDs, state that "asset protection" was a purpose

of the transfers.

Second, plaintiff states that Gentile transferred the assets to an insider and remains in

11

possession and control of them.  All of the Transferred Assets are owned, directly or indirectly, by the Family Trust.  Gentile is both a trustee and beneficiary of the Family Trust. Thus, he holds the power to control the assets and obtain the benefit thereof.  He also still occupies the Arizona Property.

Third, plaintiff points out that it threatened to sue Gentile just two weeks before the transfers were made.

Finally, plaintiff also relies on this Court's order issuing discovery sanctions against Gentile.  During discovery, Gentile failed to provide certain requested information, even after being compelled to do so by this Court.  As a sanction for his conduct, the Court deemed several facts as established pursuant to Federal Rule of Civil Procedure 37.  Plaintiff relies on the following to prove the badges of fraud:

> (1) Gentile was insolvent at the time of the transfers or Gentile became insolvent as a result of the transfers;
>
> (2) the transfers were of substantially all of Gentile's assets;
>
> (3) Gentile removed or concealed assets.

(Doc. 105).

The NDGs complain that these findings cannot be used against them because the motion for sanctions was directed only against Gentile.  The Court agrees and will not consider these findings against the NGDs.  In any event, plaintiff has sufficiently established several badges of fraud, such that its inability to rely on this Court's sanctions order is not fatal.

The Court finds that, considering all of the facts and circumstances, the transfers were made with an actual intent to defraud.  They were made to an insider, Gentile remains in

12

possession and control of the assets and Gentile had been threatened with suit when the transfers were made.  The evidence also proves, and defendants do not dispute, that the transfers disposed of all of Gentile's assets.  It is now incumbent upon the NGDs to prove they took the assets in good faith and Gentile received reasonably equivalent value for the assets.  *Blood*, 834 N.E.2d at 369.  This defendants have failed to do.

Initially, the Court notes that defendants do not even argue that they took the assets in good faith.  Indeed, it would be difficult to do so considering each of the NGDs is controlled by Gentile himself.

As to reasonably equivalent value, the NGDs argue that it is incumbent upon *plaintiff* to prove Gentile did not receive reasonably equivalent value.  This would be true if plaintiff were forced to proceed under a constructive fraud theory.  However, where actual intent to defraud is shown, reasonably equivalent value is not an element of plaintiff's claim.  Ohio Rev. Code § 1336.04(A).  It becomes defendant's burden to rebut the showing of intent to defraud by demonstrating reasonably equivalent value was received for the transferred assets.  Here, the NGDs do not attempt to establish such value.  They state he received some value for the Arizona Property in that he was given the right to occupy the property after the transfer.  The NGDs similarly argue that Gentile received value for the remaining Transferred Assets because he is a beneficiary of the Family Trust - the entity which owns the assets.  This, according to the NGDs, is value.  The Court finds the NGDs have failed to provide any evidence of *reasonably equivalent* value.

Accordingly, the Court concludes that plaintiff has established Gentile acted with an actual intent to defraud plaintiff when he transferred the Arizona Property to Ponderosa, the

13

Ohio Property to Euclid, the Family Assets to the Family Trust, the Dynasty Asset to the Dynasty Trust and Gentile's Oppenheimer Accounts and the Joint Oppenheimer Account to Asset Management.

      B.      Whether the Transferred Assets were Gentile's "Assets"

An "asset" is defined by the UFTA as "property of a debtor."  It does not include property "to the extent it is encumbered by a valid lien."  Nor does it include property "to the extent it generally is exempt under nonbankruptcy law."  Ohio Rev. Code § 1336.01(B); Ariz. Rev. Stat. § 44-1001(1).

      1.      The Arizona Property

The parties agree that Arizona law controls whether the Arizona Property was one of Gentile's assets.  Pl. Br. at 6-7 (Doc. 117).  The Arizona Property was titled in both Gentile and his wife's names.  Plaintiff argues that under Arizona law, if title is taken in the names of both spouses, both spouses have some ownership interest in the property.  *Community Property Law*, Arizona Practice Series, § 4.1.  This treatise directly contradicts plaintiff's argument.  The treatise actually states that if title is taken in both names the property can be joint property or it may still be the separate property of one spouse.  *Id.*  Thus, citation to this treatise does not carry the day for plaintiff.

In the alternative, plaintiff argues that under Arizona law, when real property is paid for by one spouse but titled in both spouses' names, a presumption arises that the paying spouse has made a gift of one-half of the property to the non-paying spouse.  *Stevenson v. Stevenson*, 643 P.2d 1014, 1015 (Ariz. 1982).  The burden is on Mrs. Gentile to rebut the presumption.  *Id.*

14

Plaintiff further relies on the fact that the Arizona Property was, in part, purchased with joint funds from an equity line of credit on the Gentile's home in Pepper Pike, Ohio. The Gentiles have admitted they both owned the Pepper Pike home.  Thus, at least some joint property was used to acquire the Arizona Property.

Plaintiff also points out that Mrs. Gentile filed for divorce in 2005.  In that filing, she submitted an affidavit stating the Arizona Property was owned by both her and her husband.

In opposition, the NGDs submit a new affidavit by Mrs. Gentile stating that the property is hers alone.  The Court will not consider this self-serving and contradictory statement as evidence that the property was solely hers.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999).

The NGDs also submit an affidavit from Gentile, parroting his wife's statement that she purchased the property with her own funds.  Plaintiff moves to strike this affidavit, because Gentile willfully refused to participate in discovery.  As a sanction for his conduct, the Court ordered that he was prohibited from entering evidence in support of the NGDs. Accordingly, the Court will strike his affidavit.  In any event, the affidavit does not provide any evidence that is not already before the Court in some other form.

The NGDs add that the Arizona Property is not an asset because it is encumbered by valid liens that exceed the fair market value of the property.  There are two mortgages on the property as well as a mechanic's lien.  These liens total more than $470,000.  Arizona also has a homestead exemption, which protects up to $150,000 of equity in a residence from attachment, execution or forced sale.  Thus, more than $620,000 of the Arizona Property's value is encumbered.  The NGDs submit the report of an appraiser, Kevin LeClair, assessing

15

the current value of the home at $600,000 to $625,000.

Plaintiff moves to strike Mr. LeClair's report, arguing it is not relevant.  The Court agrees.  As stated in plaintiff's reply, the current market value is not relevant to a determination of whether or not the property was an asset of Gentile's when it was transferred.[6]  The current value is relevant only to a determination of an appropriate measure of damages.[7]  The motion to strike the Mr. LeClair's report is granted.

Plaintiff replies that in order for property to be considered an asset, the property must only have had value at the time of the transfer.  *Viscount Air Servs., Inc. v. Cole* (*In re Viscount Air Servs., Inc.*), 232 B.R. 416, 435 (D. Ariz. Bankr. 1998); *see also Atl. Veneer Corp. v. Robbins*, 2002 Ohio 5363, ¶ 29 (Ohio Ct. App. 1993).  The property was transferred on May 31, 2007.  Plaintiff points to county assessment records for the years 2007 and 2008 finding the Arizona Property was worth $758,500 and $794,000, respectively.  The source of these records is attested to by Timothy Richards.

The NGDs, for their part, move to strike plaintiff's evidence of the property's value arguing such evidence was not properly authenticated or that it must be presented as expert testimony.  The Court denies the motion to strike, finding it to be without merit.  As the NGDs admit, the affiant need only state the public record "is in fact the public record it purports to be."  This, Mr. Richards has adequately done.  Moreover, the NGDs point the

---

[6]

       Even if the Court were to consider Mr. LeClair's report, his valuation does not foreclose the possibility that the Arizona Property still has value and, thus, should be considered an "asset."

[7]

       The question of a measure of damages is not before this Court.  It is a question for the appropriate Arizona court in a collection action.

16

Court to no authority supporting their argument that expert testimony is required for this sort of evidence.  *Smith v. Padgett*, 1986 Ohio App. LEXIS 7518 (Ohio Ct. App. Jul. 11, 1986), merely states that if a lay witness is going to give his *own opinion* as to the value of his property, the court must ensure he speaks with personal knowledge on the subject.

The Court finds plaintiff's evidence of value sufficient for purposes of establishing the Arizona Property was an asset of Gentile at the time he transferred it.

2.     <u>The Ohio Property</u>

The parties agree that ownership of the Ohio Property is governed by Ohio law.  Def. Br. in Opp. at 3.  The Ohio Property was titled in both Gentile and his wife's name before its transfer to defendant Euclid.  The deed indicated the property was held by "Marcia L. Gentile and John C. Gentile ... for their joint lives, remainder to the survivor of them."

The NGDs argue that the Ohio Property was purchased with Mrs. Gentile's separate property and, thus, remains her separate property.  They rely on the self-serving affidavit by Mrs. Gentile stating she purchased the property with her own funds.  The affidavit in support of her divorce petition of course states that she and Gentile owned the property jointly.  As explained above, Mrs. Gentile's new affidavit will not be considered because it is in direct conflict with her affidavit in support of her divorce petition.

The NGDs also rely on certain "documents associated with her acquisition of the Ohio Property."  These documents include a cancelled check drawn on Mrs. Gentile's sole account for a portion of the purchase price.

Plaintiff argues that by executing a joint survivorship deed, the property became marital property.  For this, plaintiff relies on *Osborn v. Osborn*, 2004 Ohio 6476, para. 34 (Ct.

17

App. Ohio Dec. 3, 2004) (execution of a "joint survivorship deed transfers a present undivided one-half interest and not merely an expectancy of future interest").  The Court agrees that putting Gentile's name on the deed granted him an ownership interest in the property.  Given this and Mrs. Gentile's divorce affidavit, plaintiff has established the Ohio Property was an asset of Gentile before it was transferred to defendant Euclid.

        3.       <u>Gentile's Oppenheimer Accounts</u>

The Schedule of Assets created when these assets were transferred to defendant Asset Management identifies Gentile's Oppenheimer Accounts as his separate property.  The NGDs admit these are Gentile's separate assets.  Def. Br. in Opp. at 12 (Doc. 118).

        4.       <u>The Remaining Transferred Assets</u>

The NGDs do not seriously dispute that Gentile had some ownership interest in the other Transferred Assets (the Joint Oppenheimer Account, the Dynasty Asset and the Family Assets).  They admit that there is a strong presumption that any property acquired during a marriage is community property with each spouse having an ownership interest therein.  Their only evidence is Mrs. Gentile's affidavit, which states her separate property includes "various bank accounts and other items."  This is insufficient to find that Gentile had no ownership interest in these assets.  The assets were identified in the Schedules of Assets for the various trust defendants as community property.  They were also identified as such in Mrs. Gentile's affidavit accompanying her divorce petition.  The Court finds that Gentile had an ownership interest in the remaining Transferred Assets.

For the reasons stated above, the Court finds that Gentile fraudulently transferred the Transferred Assets with an actual intent to defraud.  Summary judgment is granted in favor of

plaintiff and against defendants on Counts 2, 5, 9, 13 and 18.

Given this finding, the Court need not address plaintiff's alternative theories of recovery.  Counts 3-4, 6-8, 10-12, 14-17 and 19-20 - espousing theories of constructive fraud and fraud based on "insider" status - are dismissed as moot.

## III.    Collectibility

The NGDs argue that plaintiff's claims are futile because plaintiff cannot collect on any judgment it might obtain.  The NGDs find support for their position in an Arizona statute relating to the management and control of marital property.  The Arizona law provides:

> Either spouse separately may acquire, manage, control or dispose of community property or bind the community, except that joinder of both spouses is required in any of the following cases:
> ***
> Any transaction of guaranty, indemnity or suretyship.

A.R.S. § 25-214(C)(2).  If this statute applies, Gentile's Guaranty can only bind his separate property.  If it does not, plaintiff may attached joint marital property as well.

In deciding whether or not the statute applies in cases such as the instant case, where a married couple lives in one state but one spouse unilaterally executes a guaranty in another, the Arizona courts look to the Restatement.  *Phoenix Arbor Plaza v. Dauderman*, 785 P.2d 1215, 1217 (Ariz. Ct. App. 1989) (holding that the statute will apply where the guaranty was entered into in Arizona even though the couple lived in a non-community property state).

The court is to consider:

> (a) The needs of the interstate and international systems,
>
> (b) The relevant policies of the forum,
>
> (c) The relevant policies of other interested states and the relative interests of those states in the determination of the

19

particular issue,

(d) The protection of justified expectations,

(e) The basic policies underlying the particular field of law,

(f) Certainty, predictability and uniformity of result, and

(g) Ease in the determination and application of the law to be applied.

*Phoenix Arbor*, 785 P.2d at 1217 (quoting Restatement at § 6).

Gentile was a resident of Ohio when he executed the Guaranty.  Plaintiff is an Ohio banking corporation.  The Guaranty was negotiated and to be performed in Ohio.  The underlying loan was negotiated and to be performed in Ohio.  Ohio clearly has an interest in seeing plaintiff be made whole and plaintiff justifiedly expected to be paid on the Guaranty. Thus, the Arizona statute prohibiting attachment of community property does not apply.[8]

The Court recognizes that Arizona has an interest in enforcing its policy of protecting one spouse from the unilateral debts of the other.  However, the Gentiles did not live in Arizona when the Guaranty was entered into.  They cannot reasonably expect to be protected by Arizona's laws, because "community property laws may not be used to make Arizona a haven for debtors from non-community property states."  *National Union Fire Ins. Co. v. Greene*, 985 P.2d 590, 595 (Ariz. Ct. App. 1999) (holding that judgment against one spouse from a non-community property state may be enforced against community property even if

---

[8]

The result is the same if the Court applies the "most significant relationship test" used to decide choice of law questions in tort actions including those alleging fraudulent conveyances. *See Nat'l Ctr. for the Empl. of the Disabled v. Ross*, 2006 U.S. Dist. LEXIS 18266 (D. Ariz. Mar. 27, 2006).

20

the couple moves to Arizona after judgment was entered in the non-community property state).

The Court must now determine which of the Transferred Assets are Mrs. Gentile's separate property - not subject to execution - and which are joint property or Gentile's separate property.[9]

A.    The Transferred Assets

The Court has already found that Gentile had an ownership interest in all of the Transferred Assets.  There is no genuine dispute that he was either the sole owner or a joint owner of the Arizona Property, the Ohio Property, Gentile's Oppenheimer Accounts, the Joint Oppenheimer Account, the Dynasty Asset and the Family Assets.

The NGDs argue, in a single sentence in their brief in opposition, that certain of the Transferred Assets are not collectible because they are shielded under the UFTA.  Ohio Rev. Code § 2329.66(A); Ariz. Rev. Stat. §§ 33-1123, 1125-26.  They state that the "household goods and personal effects," automobiles, and one of Gentile's Oppenheimer Accounts (account number ending -7194) are protected from attachment (the "Protected Assets").

Plaintiff does not dispute that these limitations apply.  Plaintiff merely responds that

---

[9]

   The parties make myriad other arguments as to why Arizona law should or should not apply.  None of the other arguments is supported by case law interpreting this particular Arizona statute.  They all rely on interpretations of property law in other contexts such as distribution of property upon divorce.  Because none of these other arguments are on point, the Court declines to address them.

   The Court also rejects plaintiff's remaining arguments.  Mrs. Gentile did not ratify the Guaranty.  Plaintiff's argument that the Gentiles are not residents of Arizona is also unavailing.

21

the Protected Assets may not be protected in full.  Plaintiff argues that defendants have the burden to prove the value of the assets but plaintiff provides no legal support for its position and the Court has found none.

The Arizona statute does provide that certain household goods and necessities are exempt from attachment up to a certain defined fair market value.  Ariz. Rev. Stat. §§ 33-1123, 1125.  Retirement accounts are protected in full.  Ariz. Rev. Stat. § 33-1126.[10]  The Court finds that the Protected Assets are exempt from attachment to the extent set forth in the statute.[11]

B.      Cash Transfers to Mrs. Gentile

Counts 21-24 were added with plaintiff's Third Amended Complaint.  Plaintiff did not move for summary judgment on these counts.  Defendants have.  These counts allege Gentile transferred various cash assets to his wife.  These assets were first transferred to two AmTrust bank accounts (account numbers ending -6880 and -9992) held separately by Mrs. Gentile.  Ownership of the accounts was then transferred to Asset Management.  There are five alleged categories of transfers:  (1) more than $7,000 in Gentile's paychecks; (2) $17,000 in what is alleged to be Gentile's separate cash; (3) $40,000 in jointly held cash; (4) $7,223 in joint insurance proceeds; and (5) a joint federal tax refund in excess of $220,000.  Defendants argue that plaintiff cannot collect to the extent these assets are Mrs. Gentile's separate property.

_____

[10]
        Ohio's protection statute applies only to residents of Ohio.

[11]
        Again, this question is not before the Court.  It is a question for the
        Arizona courts in a collection action.

22

Clearly, Gentile had an ownership interest in his own earnings.  By the Court's calculations, his paychecks that were transferred to his wife totaled $7,929.17.  The Court finds, for the reasons stated in connection with the Transferred Assets discussed above, that Gentile had an actual intent to defraud plaintiff when he transferred these funds to Mrs. Gentile.  Defendants do not argue otherwise.  Plaintiff's Count 22 is directed to the transfer of these funds with actual intent to defraud.  Even though plaintiff did not move on this Count, the Court will *sua sponte* grant summary judgment to plaintiff on Count 22 as to the transfers of Gentile's earnings.  Plaintiff may attach $7,929.17 of the cash held in the AmTrust Accounts.

The Court's review of plaintiff's remaining evidence reveals that what plaintiff refers to as "Gentile's separate cash" are funds from his children's accounts.  Plaintiff provides no evidence that Gentile has an ownership interest in these funds and may not collect on them.

As to the "jointly held cash," some of these transfers also came from Gentile's children's accounts.  And, several of the transfers appear to have come from accounts held solely in Mrs. Gentile's name or checks made out solely to her.  It appears that only $14,500 in cash was transferred from jointly held accounts to Mrs. Gentile's accounts.  Defendants argue that the initial source of these "jointly held" funds was Mrs. Gentile's inheritance.  In both Ohio and Arizona, one spouse's inheritance remains that spouse's separate property.  Ohio Rev. Code § 3105.171; Ariz. Rev. Stat. § 25-213.  Plaintiff argues that to the extent these funds were Mrs. Gentile's separate property, the funds have been commingled.

Both Arizona and Ohio law provide that a spouse's separate property may become marital property if the assets are commingled.  *In re Marriage of Cupp*, 730 P.2d 870 (Ariz.

23

Ct. App. 1986); *Thornsley v. Thornsley*, 2002 Ohio 2508 (Ohio Ct. App. 2002).  However, cash is not considered commingled if it is traceable to a separate source.  *Thornsley*, 2002 Ohio 2508 (citing Ohio Rev. Code § 3105.171); *Graham v. Graham*, 2008 Ohio 4877 (Ohio Ct. App. Sep. 25, 2008) ("commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable").

The burden is on defendants to trace the money back to Mrs. Gentile's inheritance. Mrs. Gentile provides an affidavit and cancelled checks establishing the money came from her inheritance.  And, the Schedule of Assets created when these funds were transferred to Asset Management categorizes the money as her separate property.  Plaintiff does not rebut this evidence with any evidence of its own.  Nor does plaintiff provide evidence that the cash from the inheritance is no longer separately traceable or that Mrs. Gentile intended for her husband to have joint ownership of the funds.  Plaintiff may not collect on the "jointly held cash."

For these same reasons, plaintiff may not collect on the tax refund either. This refund was the result of a large disbursement from Mrs. Gentile's inheritance and plaintiff does not rebut this.

Turning now to the joint insurance proceeds, Mrs. Gentile states that she paid for the insurance policy out of her inheritance.  Plaintiff argues only that Gentile had an ownership interest in the proceeds because the settlement check was made out to him and his wife jointly.  The Court finds that because Mrs. Gentile paid for the policy, the proceeds are her separate property.

In sum, summary judgment is granted in part to plaintiff on Count 22 in the amount of $7,929.17.  Summary judgment is granted in part to defendant on Count 22 as to the remaining cash in the AmTrust Accounts.  Counts 21, 23 and 24 - directed to alternate theories of recovery - are dismissed as moot.

**<u>CONCLUSION</u>**

For the reasons stated above, plaintiff's Motion for Summary Judgment is GRANTED as to the counts directed to an actual intent to defraud:  Counts 2, 5, 9, 13 and 18.  The Non-Guarantor Defendants' Motion for Summary Judgment is DENIED as to these same counts.

The counts alleging constructive fraud and fraud based on "insider" status are DISMISSED as MOOT:  Counts 3-4, 6-8, 10-12, 14-17, 19-21 and 23-24.

As to Count 22, the Court *sua sponte* GRANTS summary judgment to plaintiff as to the transfers of John C. Gentile's paychecks to his wife.  The Non-Guarantor Defendants' Motion for Summary Judgment on Count 22 is DENIED as to Gentile's paychecks and GRANTED as to all other alleged cash transfers.

Plaintiff's Motion to Strike is GRANTED.

The Non-Guarantor Defendants' Motion to Strike the Affidavit of Timothy Richards and Certain other Exhibits is DENIED.

The transfers of the following assets are hereby voided:  the Arizona Property, the Ohio Property, Gentile's Oppenheimer Account ending -1111, the Joint Oppenheimer Account, the Dynasty Asset,  the Family Assets (except for the "household goods and personal effects" and automobiles to the extent protected by Arizona law) and Gentile's paychecks.  Gentile's Oppenheimer Account ending -7194 is also exempt from collection to

the extent provided for by Arizona law.

       IT IS SO ORDERED.


                          /s/Patricia A. Gaughan
                         PATRICIA A. GAUGHAN
                         United States District Judge

Date:    4/24/09

26